41 N.J. Super. 199 (1956)
124 A.2d 323
HENRY L. WULSTER AND K. ELIZABETH WULSTER, PLAINTIFFS-APPELLANTS,
v.
BOROUGH OF UPPER SADDLE RIVER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued July 9, 1956.
Decided August 2, 1956.
*200 Before Judges FRANCIS, HUGHES and KNIGHT.
Mr. James A. Major argued the cause for the appellants.
Mr. John S. Harrison argued the cause for the respondent (Messrs. Harrison & Brown, attorneys; Mr. Gordon H. Brown, on the brief).
The opinion of the court was delivered by FRANCIS, J.A.D.
The governing body of the Borough of Upper Saddle River declined to grant a permit to plaintiffs to remove a large quantity of soil from a tract of land owned by them. The Law Division sustained the refusal.
On September 9, 1954 an ordinance was adopted to regulate and control the removal of soil from land within the borders of the borough. Section 1 provides:
"No person shall excavate or otherwise remove soil for sale or for use other than on the premises from which the soil shall be *201 taken, except in connection with the construction or alteration of a building on such premises, and excavation or normal grading incidental thereto, without first having procured permission therefor from the Governing Body."
Section 2 proscribes consideration of a request for permission until the owner of the premises files with the borough clerk a written application together with a map of the premises "showing the contour lines and proposed contour grades resulting from such intended removal of soil in relation to the topography of the premises." The proposed contour lines and grades are made subject to inspection and approval by the council.
Section 3 sets forth the matters to be taken into account in passing upon the application. The governing body is required to consider the public health, safety and general welfare and particularly the following factors:
"a. Soil erosion by water and wind.
b. Drainage.
c. Soil fertility.
d. Lateral support slopes and grades of abutting streets and lands.
e. Land values and uses.
f. Such other factors as may bear upon or relate to the coordinated, adjusted and harmonious physical development of the Borough."
Plaintiffs' tract is approximately 51 acres of unimproved land. 42+ acres lie on the westerly side of West Saddle River Road; 8+ acres are on the east side thereof. The larger parcel, with a frontage of about 900 feet and a depth of about 2,500 feet and which is substantially rectangular in shape, is involved in these proceedings.
On October 14, 1954 an application was filed to excavate 789,000 cubic yards of soil therefrom. The quantity to be removed from the premises was not specified but the plaintiff Henry L. Wulster indicated at the Law Division hearing an intention to sell about 500,000 cubic yards. The rest was to be used for regrading the land. The purpose of the sale was said to be to meet the cost of the excavating and grading project. The operation would be a gigantic *202 one. Wulster said it would take 15 months to complete. The testimony reveals that, using two power shovels and large trucks of ten cubic yards capacity, if 32 such trucks left the premises every hour during an eight-hour work day, it would take 300 working days to complete the task.
The governing body decided not to refer the matter to the borough engineer. This course was taken, not as a reflection on him, but simply because at some earlier time he had rendered professional services to persons who had also applied for soil removal permission at about the same time as Wulster. So an independent expert engineer was engaged to study the problem and report thereon.
The application not having been acted upon, plaintiffs instituted this suit in lieu of prerogative writ on November 20, 1954, alleging that the delay was not in good faith but rather to permit an amendment of the ordinance which among other things would impose a fee of two cents per cubic yard for soil removal. A judgment was sought compelling the issuance of the permit and restraining passage of the amendment or its application to plaintiffs if adopted. The answer of the borough pleaded failure on the part of the plaintiffs to exhaust their administrative remedy under the ordinance.
An order to show cause why enactment of the amendment should not be restrained was granted, returnable on December 9. On that day the restraint was denied but the borough council was directed to decide the plaintiffs' application "forthwith."
On December 6, 1954 two amendments were added to the zoning and soil removal ordinances. However, they were not applied against the Wulsters and the pretrial order recites that the borough does not rely upon them in this action.
On December 9 the council met and denied plaintiffs' application. The ground set out in the resolution is that the soil removal project would constitute a commercial activity (apparently the sale of the soil) in a residential *203 zone in violation of the zoning ordinance. However, notice of the denial was not given until the middle of January 1955.
Section 3 of the ordinance provides that:
"In the event permission is not granted, the applicant, upon written request for a hearing made to the Governing Body, shall be given an opportunity to be heard within 30 days thereafter."
This language is not as clear as it might be. But in our judgment the import is that when permission is denied, a demand made within a reasonable time after notice of the denial renders a hearing mandatory within 30 days of the receipt of the demand.
It is conceded that no request for a hearing was submitted at any time after notice of the denial of permission was received by plaintiffs. The pretrial order sets out a contention of the defendant that the suit should be dismissed for failure to exhaust this administrative remedy. R.R. 4:88-14 ordains that:
"Except where it is manifest that the interests of justice require otherwise, proceedings under Rule 4:88 shall not be maintainable, so long as there is available * * * administrative review to an administrative agency or tribunal, which has not been exhausted."
In situations like the present one, and even though the suit may have been brought properly before the application for permission was acted upon by the borough, we hold the view that when plaintiffs were notified of the adverse determination, they should have applied to the governing body for a hearing before proceeding with the pending action in lieu of prerogative writ. Then the matter would have been explored thoroughly at a public hearing and not permitted to rest upon the ex parte determination of the mayor and council. Instead of seeking such a hearing, plaintiffs amended their complaint. The only relief demanded was a judgment declaring both original and amended ordinance void as ultra vires.
The trial court did not dismiss for lack of compliance with R.R. 4:88-14. Whether he considered it inapplicable or simply felt that in the "interests of justice" it should not *204 be invoked because of the peculiar circumstances of the case, does not appear. In view of the rather unusual situation presented and the fact that a plenary hearing was held on the merits, we are disinclined to interfere with the course pursued.
At the plenary hearing consideration of the propriety of the refusal of permission to remove soil was not limited to the ground assigned therefor, namely, that sale of the soil would violate the zoning ordinance. All reasons justifying the denial were permitted to be shown under the doctrine expounded in Tice v. Borough of Woodcliff Lake, 12 N.J. Super. 20 (App. Div. 1951). There Judge (now Justice) Brennan said:
"* * * To bar a municipality from raising in the law action other reasons justifying the denial of the permit merely because they were not assigned at the time it was denied would be attended by unfortunate and undesirable consequences. For example, are the plaintiffs to be licensed to erect structures departing from construction standards particularized in the building code? * * * We cannot subscribe to a principle which tends so easily to defeat the vital public interest in safety and health which underlie those standards. * * * We fail to see why their omission is to have the consequence of foreclosing the borough to defend the plaintiffs' action in the Law Division on other substantial grounds merely because the borough officials thought there was no occasion to determine and specify those grounds when the permit was refused."
After all of the evidence and exhibits had been submitted the position of the borough council was sustained.
On this appeal plaintiffs argue, first, that the method followed by the borough in handling the application lacked procedural due process. While the tenor of the argument on this score is somewhat obscure, the claim seems to be that the failure to provide for a hearing or to grant one before denying permission to remove the soil offends against the due process safeguard of the Constitution. We find no merit in the point. Metropolitan Motors v. State, 39 N.J. Super. 208, 212 (App. Div. 1956).
Next it is contended that the ordinance is not applicable to the project. According to the plaintiff Henry L. Wulster, *205 the soil is to be removed in order to level the land, in part for agricultural purposes (about one-third allegedly not being tillable under present conditions), and in part for a half-mile track for riding and trotting horses. The track would be installed at some unspecified future time for use by his grandchildren and perhaps by some of his friends, on invitation. At present he has no horses and at no time during the past ten years has he owned more than one horse.
The trial court pointed out that under the proof the track could be constructed on the property without excavation. He indicated also that both of the asserted purposes could be accomplished without any such extensive soil removal as was desired. Moreover, he expressed grave doubt as to whether the motives prompting the plaintiffs' application were fully revealed and whether they were not in fact more materialistic than those asserted.
If, after appraising the application on the basis of the standards set out, the governing body is of the opinion that the soil removal will not create "conditions inimical to the public health, welfare and safety, and will not result in the creation of any sharp declivities, pits or depressions, soil erosion or fertility problems, depressed land values, nor create any drainage sewerage problems or other conditions of danger," the ordinance requires permission to be granted. The proof presented in the Law Division shows that the proposed excavation would result in a cut along the northerly line of the tract which would leave the adjoining property five feet higher at a point 400 feet from the westerly line of West Saddle River Road; 16 feet higher 875 feet in; 30 feet higher 1,300 feet in; 24 feet higher 1,620 feet in. On the southerly line the adjoining property would become five feet higher 400 feet in from the road; ten feet higher 875 feet in, and 25 feet higher at 1,300 feet. Along these sidelines the slope of the ground would be 2:1, or a 50% grade.
It is obvious from this general description of the physical change plaintiffs seek to accomplish and the tremendous quantity of soil which must be removed in order *206 to bring it about, that the project is plainly within the terms of the ordinance. The problem as to whether the enactment represents a proper exercise of the municipal police power has already been adjudicated specifically by the Supreme Court. In Fred v. Mayor and Council, Old Tappan Borough, 10 N.J. 515 (1952), where the precise type soil removal ordinance was involved, the court said:
"There can be little question but that this broad grant of police powers to a municipality encompasses the authority to enact an ordinance regulating the removal of soil." 10 N.J., at page 521.
Finally, it is urged that the trial court erred in finding that the governing body exercised good faith in rejecting plaintiffs' application. As to this, the record contains ample evidence in support of the conclusion reached and no justification exists for an independent review of the facts by us.
Under the circumstances of the case, there is no need to decide whether the zoning ordinance would bar the sale of the soil as a commercial activity. See Fred v. Mayor and Council, Old Tappan Borough, supra, 10 N.J. 521, 522.
The judgment is affirmed.